It may be H-A-T. I'm sure you'll tell me. Mr. Gilbreth? Good morning, Your Honors. Robert Gilbreth for Appellant Hoover Panel Systems. This case involves an arrangement between my client, Hoover Panel Systems, and the Appellate HAT Contract to develop and sell a power beam product for use in open office environments. At the outset of the arrangement, the parties signed a confidentiality agreement, and that agreement required the parties to maintain the confidentiality of Hoover's product prototype and all other proprietary information that was exchanged between the parties. Now, it's undisputed that HAT failed to preserve the confidence of Hoover's prototype. So the issue before the court today is whether that conduct breached the parties' agreement. The district court concluded that it did not, and it rendered summary judgment for HAT. But unless the opening paragraph of the confidentiality agreement can be ignored, the district court Now, the district court relied on the first numbered paragraph of that contract. Why have the first numbered paragraph if you've already covered it in the opening paragraph? That agreement, Your Honor, I would concede is regrettably poorly drafted. I don't know. You didn't write it. Thank goodness, no. And that's what we submit should be determined by a finder effect. So the court relied on You're saying that the opening paragraph set out certain things that were sort of automatically confidential, and paragraph one kind of adds to that. Yes. So that was the That's the way we have offered to the court To harmonize To harmonize, exactly, is to say it clearly applies to the prototype, and that the second paragraph applies to information that was subsequently provided or exchanged between the parties that might not be so obviously confidential as the prototype. Now, the opening paragraph, unlike the first numbered paragraph, did not require any affirmative step to preserve confidentiality. Instead, in that paragraph, the parties agreed to treat all proprietary information, including prototypes, as confidential. Again, no requirement that it be marked confidential. The district court, we submit, could not simply ignore that opening paragraph. It's an operative clause. It's not a mere recital. It contains unmistakably promissory language. So it's our position that the district court was required to do one of three things. The first would be to attempt to harmonize the two paragraphs. And as I mentioned, we've offered a way to do so. It's admittedly imperfect, but as it typically is in these sorts of cases, we think it gets a passing grade and the court can face its decision on our proffered harmonization. If harmonization is not possible, then the trial court or the district court had two choices under Texas law. It could treat the opening paragraph as controlling because it comes first. It comes before the first numbered paragraph. Or it could require the finder of fact to determine the intent of the parties. Now, we've cited cases from both Texas courts and this court that support application of the rule that the paragraph or clause that comes first should be given controlling effect. Why do we have to do any of that? Why isn't it just that the opening is the big part, and then the one needs to be as close to the big part as possible, except there's an exclusion which is going to be carved out. You know, if you make boxes with this. But it doesn't quite go all the way to the edge because there will be some things that weren't done correctly. Right. But still the big box is the answer to the question regardless of whether or not it's been marked, which is a subset of the big box. I agree with that, Your Honor. So you don't need to do any factual. You just look at the document itself. I would agree. I would agree. And that would fit within our harmonization. What? Okay. So, but if the court doesn't agree with that position, then those are the two rules that the district court should have applied. Now, as for the option of sending it to the finder of fact or saying that the first paragraph is controlling, I couldn't find a case saying that one approach should control over the other. It looked long and hard. But because the district court failed to do either one of those, it erred in rendering summary judgment on our claim for breach of the confidentiality agreement. Now, Hatt contends that this court should construe the contract against Hoover because it was the drafter, but the court should reject that invitation for a couple of reasons. First, as we've shown in our briefs, under Texas law, the doctrine of contraprofarentum is a disfavored doctrine. It's resorted to only when all other rules fail. But isn't it resorted to before you submit to the jury? I would say I think the answer to that would be it's submitted only when all other rules fail. Here we have the rule that the first clause should be given controlling effect. But you said, you know, if we don't buy that, that it would go to the finder of fact, and I thought the whole point of, you know, rules kind of being ranked in order is we're trying to avoid finding something ambiguous or submitting to a finder of fact. Like if this was an insurance policy, we would construe it against the insurance company and be done. We don't give that to the jury. So that's contraprofarentum. It's just more clearly stated in insurance cases. So before we would get to a jury in this case, we would have to construe against you. I think so, but even if you construe against us, I think that the court should instead, since a condition precedent to applying contraprofarentum is that all other rules of construction fail. I understand that. I understand that. But I was just getting an order, and the order is before we go to the jury, we do every other rule. I agree. Okay. I agree. You're not disagreeing that you're the profarentum? Profarenta? That y'all wrote it, and it wasn't some communal thing where y'all sat around the table and added paragraphs or I sent you a copy and you revised it. Y'all wrote it. I agree. You're a client, not a chief. Yes, I agree. So for all of these reasons, the district court erred in rendering summary judgment on our breach of contract claim based on the confidentiality agreement, and to me, the remaining issues in the case seem very cut and dried, so unless the court has any questions on those issues, I'll yield the balance of my time and rely on our briefs for those issues.  Thank you. May it please the court. Kevin Schuette on behalf of the Appellate Hat Contract. The parties in this case agree on a lot, which is unusual, which is unusual from what we've heard this morning. We agree that they were the drafter of this contract. You want to just settle right now? I wish I could get into that, Your Honor. I don't agree that much. I wish we could get into that, Your Honor. We agree that there was no challenge to the validity of this contract, that there's an express written contract that neither side has challenged the validity. Neither party pled ambiguity in this case, and in fact, at the summary judgment level, we alternatively brought up ambiguity, and they called us out for it, saying that we didn't plead it, and in fact, we brought up the parole evidence rule. I've had that experience on the trial court where both sides argued, oh, so clear, it's X. Yes, Your Honor. It's not X, and I have found it ambiguous in those situations, not all of them. Yes, Your Honor. And so both lawyers were unhappy with me. Generally, yes, Your Honor, and generally it must be pled. What we know about Judge Cummings' order is in 12 pages he outlined every process he went through to construe and harmonize and come up with his opinion. He didn't just – Mr. Gilbreth's version of fair harmonization, that the opening paragraph lays out – and then paragraph one is kind of like when we're just talking by email, maybe that doesn't seem confidential. I better designate it confidential. Yes, Your Honor, and unfortunately the paragraph doesn't say that. It doesn't have what Mr. Gilbreth is proposing to this court. If you look, it's in the reply brief. I know the record is voluminous, but the reply brief, Hoover put in the reply brief the actual provisions, the intro and paragraph one. It is on page five of the reply brief. And if you look at the intro, it says that both parties agree that all information disclosed. It doesn't qualify it. It's all information. It doesn't say that an email that comes later or subsequent communications. There's no timing element to this. There's no initial production and later production. It is all information disclosed to the other party, such as, which is a non-exclusive list, and it rattles off several types of information that could be considered proprietary or confidential, even going as far as saying at the end, and any other proprietary material. It's an open-ended definition. I think that it's prior to proprietary should be kept confidential. And when does it say that if you didn't mark it, then you've abdicated your confidentiality? Right. Help me on that. Yes, Your Honor. Well, that takes you from the intro paragraph to paragraph one, which we cannot just ignore the fact that Mr. Hoover labeled it paragraph one. And that tells you how you're going to get to designating confidential. There is not a defined term in the intro paragraph. The first defined term is in paragraph one. And, again, it says that both parties agree to keep all information. So we haven't narrowed it down any from the first intro paragraph. We're actually just specifically saying once we find the information, the other side, which we'll disclose, indicates is confidential or proprietary or marked with words of similar import, herein defined term information. Right. But if Hoover says if you don't do that, then you lose the confidentiality, does it? Well, but it does not say the negative of what you're saying, Your Honor. It doesn't say you'll lose the confidentiality. If you fail to designate something as confidential, is it not confidential? If it was an accident? And interesting, Your Honor, because I've had this thought. This case had a protective order and had a confidentiality order to produce discovery. And in that document, we had a clawback provision. If you inadvertently disclose something that was confidential that didn't mark, this record, half of it is filed under seal. The parties took extreme measures to make sure that it was marked and it was filed under seal. And in that protective order drafted by lawyers, we have a clawback provision that says if we inadvertently disclose something that's not marked, we can bring it back. But if it doesn't have a clawback provision, it doesn't mean that it's not confidential in the definition in the first paragraph. But he said that he would mark all information, not subsequent e-mails. Everything I give you will be marked confidential, here and after information. But it's not the marking that makes it confidential. It's the contents of the document that makes it confidential. Yes, Your Honor. The marking is just a way to keep track of it so you know to try to help protect against inadvertent disclosure. It's a housekeeping mechanism to keep track. It's not the fact that if it has the mark, it becomes the secret. It was already the secret in the first paragraph. So help me here. I want to see it your way, so help. The contract, the parties were free to contract. The contract said we will mark things that are confidential. Right, but marking doesn't make them confidential. Without the marking, you're leaving it to Hatt's assumption that an e-mail is in fact confidential or it's not. And Mr. Hoover's contract takes that. It's a pretty core confidential thing. I mean I can understand if there was ambiguity in whether this e-mail is confidential that maybe you win on that. But a prototype is sort of the DNA, if you will, of confidentiality. So why isn't that obvious? Your Honor, I would respectfully disagree that the prototype is what was going into the marketplace. The prototype is what the record shows was being showed to other third parties to test it out, to see feedback, which Mr. Hoover never objected to. The prototype was what was being used to tweak. The confidential part are the plans and the drawings that lead to that prototype. A hypothetical, Your Honor, would be a can of Coke by itself is not protected, but the formula for Coke is. The prototype is what you could end up getting in the marketplace. And, of course, if you reverse engineered it, then you would have a whole other set of lawsuits and causes of action to be brought. But here the plans and the drawings and the materials used and the size of the screws to be used, the foot component to be used, that is what makes this confidential. And you're asking – if you don't market confidential, you're asking Hatt to decipher. Well, does he consider this confidential or does he not consider it confidential? In the name of like a jury argument, I mean I kind of think if you went before a jury, you'd have a really good case your side would. But that is not the question for us. The question for us is should you have been able to get past summary judgment or should they have been able to get past summary judgment? Even though in federal court summary judgment is granted a fair amount, it's still supposed to be a hard standard. Yes, Your Honor. So obviously it's well established that breach of contract is a question of law. And the only way we're getting to a jury is if there's some confusion in this contract. All the parties have agreed that the language is very plain. The language is very clear. And you can – what you do with this plain and clear language has been disputed. But taking the intro paragraph and looking at the condition precedent, which was drafted and sent to us for agreement, if we get past – if we write that out of the contract and we say, well, everything is confidential, then what we're taking is a term that was a condition precedent that the parties must jump through as a hurdle before it can make a claim for breach of contract. We're just writing that out of the contract. And that's the reason why it doesn't go to a jury, is that Judge Cummings said he's not going to do that, that there is a procedure in place for the parties to understand what's confidential and what's not confidential. They agreed that they would mark it. Here it's undisputed. The parties absolutely agree that nothing was marked, not once, not these plans that we were talking about, not any drawings, not any emails. Nothing was marked. It was left to decide, is this confidential, is it not? Mr. Hoover didn't follow – Is there evidence that plans and other matters that you were basically conceding would fit within confidentiality and were exchanged without being marked confidential? Yes, Your Honor. It seems to me that what you're telling me is there's evidence, at least some support, that this paragraph one was basically ignored and that a lot of confidential information was exchanged. Yes, Your Honor. It was ignored. And even with the record showing that the prototype was being sent to third parties and that HATS representatives explained to Mr. Hoover that they were sending it to third parties for feedback from customers and vendors and a company overseas in China was going to make the foot, so plans were exchanged as to where to drill the holes for the foot. All of that was disclosed to Mr. Hoover, and not once did he object to the disclosure of this information to any of these third parties, which fits into our waiver and our ratification argument, which Judge Cummings also found to be valid in this case. But that is the point, is if you go look at real time what took place, he didn't follow his own condition precedent. It is a question of law about whether he can bring a breach of contract claim if he didn't follow his own condition first. Where does it say condition precedent? Well, if you look at paragraph 1, and it says both parties agree to keep in confidence and not to use for its other's benefit all information disclosed, which the disclosing party indicates is confidential. You have to indicate it as confidential. It's not a blanket coverall. I'm going to give you this intro paragraph and everything that's exchanged back and forth. We're going to drill down. You're reading that in, that it's a condition precedent though, right? That you're legal. That's what you're saying it is. It doesn't ever say it's a condition precedent like we would do in those agreements that you're talking about. This never says it's a condition precedent. You're right, Your Honor. The terms condition precedent are not there. That's kind of a loaded. It begs the question, doesn't it? Well. Because if it's condition precedent, then yes, of course you win. If it's not a condition precedent and it's just a term, then it might be ambiguous or the other term might be more applicable. Going through the rules of construction, the appellant said that Judge Cummings had two choices. He actually had three. If we're trying to harmonize, which is what the court wants to do, you don't want to render something meaningless. So if it's not a condition precedent, paragraph one at that point is rendered meaningless. There is no reason to have paragraph one. Wouldn't it help you keep up with the stuff? No, ma'am. Why not? Because the intro paragraph says all information. Then that means every email I ever send you is going to be confidential. Right, but the fact that it says confidential on it in bold letters, it chills conduct. If the document has a big stamp on it, you're more careful by just human nature. I agree. And we wish that had been the case in this situation, that he had marked it. Because he didn't mark a single thing. And we now know in hindsight he considered some of this confidential. But that's for us to guess. That was for us to figure out. That was for us to go about our conduct in helping design this so we could sell it to our customers without any markings. Had he marked anything with a red stamp of confidential? Absolutely. We would have said, you know what, this fits within paragraph one. He considers it to be confidential. We can't disclose it. But the fact that we did disclose it to third parties to get feedback, and he never objected, and the transcript of his deposition is in the record. And the e-mails where we say, hey, we're showing it to third parties, those e-mails are in the record. He never objects. He never says, oh, my goodness, you breached the confidentiality agreement because that fits in the definition of all information. That's just too broad. He wants to know what the feedback is. He wants to know, because there was discussion in the e-mails you can find, there was discussion about the paint color, there was discussion about the look, and they just go into what feedback they're getting. Is there anything else to the ratification? We cite to the bullet points of ratification, it primarily comes from his deposition and the e-mails that were part of his deposition. And it specifically, Your Honor, when your conduct, when you engage in intentional conduct inconsistent with claiming the right, the right that he's in here claiming today, or he was claiming in the district court, I should say, his conduct in bringing this lawsuit is inconsistent, intentionally inconsistent with the way he acted with us, with HATS representatives in real time. He didn't mark anything confidential like his paragraph said he would. He didn't object when we did show it and got feedback. In fact, he incorporated the feedback. He didn't object when he found out that it was being, an overseas company was being used to manufacture the foot, which now that's an issue in the lawsuit is that we said we wouldn't send it overseas, and we did. He didn't object to any of that. And so that is the basis of ratification. And Judge Cummings found that as a reason that we should win on summary judgment, that even if we find that this is not a condition precedent, he waived and he ratified these claims for taking intentional conduct that was inconsistent with asserting that claim. Looking at the construction and trying to give everything in this contract meaning, which is what Judge Cummings did, there is the premise, there is the rule that you look at the first over the second. But that's simply just favored. It is favored to look at the first paragraph over the second paragraph. But the construction that says you look at specific language over general language, that rule says that specific language of an instrument controls over its general terms. Controls. Here, looking at the paragraphs, paragraph 1 is specific. The intro paragraph is not. Paragraph 1 should control over the intro paragraph. Why is it really not specific? Because it's pretty detailed. It tells you all the different categories, whereas the other one just refers generally to information. Your Honor, the problem with that is, the reason why it's not specific is that it ends within any other proprietary material. It is a catch-all. It's not specific at all. It's anything I can think of under the sun that would fit under this definition. But I'm going to then... I mean, I'm just saying it gives up a list of real specific things. It does, and it says such as. It's not an exhaustive list. It's not a mandatory list of items. It is such as. And the last one is any other proprietary materials. That is as general as it can get. Paragraph 1 then says, we're going to take all of this information and we'll mark it confidential. That is more specific. If I mark it confidential, now you know. Now you know how to treat it. Judge Cummings found they failed to do that, and therefore, as a matter of law, their breach of contract claim fails. He also then turned to the harmonization of the paragraphs and said that the specific controls. He did ultimately get to the ambiguity question. He said, if there's ambiguity. He didn't say there was an ambiguity. But even if I got to the point where I'm working down the spectrum and I got to the point of ambiguity, at that point, we construe it against the drafter, and it doesn't go to a jury. So there were four ways in which Judge Cummings found, as a matter of law, this case doesn't go to a jury. Quickly, in the last two minutes that I have, we did raise a point on appeal as to asserting a cause of action that got dismissed because we didn't timely. We asked for leave, and we didn't ask it in a timely fashion. We took Mr. Hoover's deposition on February 7, 2019. We got back the transcript on March 28, 2019, signed, so that it was a final transcript. It was at that time that we learned that not only did he not think our product was similar to his product, that it had different components, he had never done a side-by-side comparison, he had never even seen our product, other than across the room or in pictures. It's at that time that we learned that our product had a different post, our product had a different cap, our product had a different material. Yet he brought a misappropriation of trade secrets claim because there was some similarities. There's a lot of products like this one on the market. Yet we learned on March 28, 2019, that he had done none of that before bringing this lawsuit. So we asked the court on April 18 for leave to bring a bad faith claim for bringing this lawsuit, and we were denied because we were told that we didn't do it timely. We couldn't have done it prior to his deposition. It was still within the discovery period, and we did... Did he refuse to get his deposition before that date? Did he refuse? There was some discovery disputes over documents, and the order of who was going to be deposed pushed him back. But it wasn't that he refused to come or he was sick or something like that. No, Your Honor, and it's outside the record to get into the communications with counsel because those weren't as to how the schedule came about. But no, Your Honor. It's not that shocking to depose a plaintiff in a case, and so it would seem like that would be something you would do before the amendment date, and I was just trying to discern whether there was anything that would reflect that they prevented you from doing that. No, Your Honor. Other than just the discovery period and wanting the documents, and the plaintiff was deposed last. I think your time is up. Yes, Your Honor. Thank you very much. We appreciate your argument. Thank you. Thank you, Your Honor. We have time for rebuttal if you wish to use it. I really don't have anything to add, Your Honor. We'll rely on our briefs. Can you respond to the provocation? Because that sounded pretty good. I mean, your guy sitting there letting them go all over the world, showing this to everybody and their brother, and then decides to sue, that seems a little bit funny. I think that's not a fair characterization of the evidence. If you'll look at Mr. Hoover's affidavit, he says he never gave them permission to sue. But he knew they were doing it. Isn't that ratification? He learned after the fact that they let a vendor and a potential customer look at the product. We don't think that is waiver or ratification. And I think that's the only other evidence. I don't think the record supports the notion that they were sending it all over the world. So I think at most there's a fact question. They certainly haven't conclusively proved waiver or ratification. And on this business of amending, I asked him basically why he didn't depose Hoover sooner. Does the record reflect anything that would show he was preventing his deposition from being taken? I'm not saying that you're not negotiating back and forth, but where he just refuses to give it before the amendment deadline. There's nothing in the record to support that. Unless there are any further questions, we would ask that the court reverse the judgment of the district court. Thank you. Thank you. Appreciate your arguments. This case is submitted. Thank you. Our next case for today is... Do you want... He doesn't need one. Do you want one? Our next case for today is 2019-03-01.